ACCEPTED
05-14-00076-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
3/13/2015 10:27:52 AM
LISA MATZ
CLERK

No. 05-14-00076-CR

IN THE

FIFTH COURT OF APPEALS

OF TEXAS

AT DALLAS, TEXAS

*The State requests argument
only if Appellant argues*

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
3/13/2015 10:27:52 AM
LISA MATZ
Clerk

_____

JAMES LOYD BANKSTON

V.

STATE OF TEXAS

_____

*On Appeal from the County Court at Law,
Kaufman County, Texas, in Cause Number 31508CC*

_____

**BRIEF OF THE STATE OF TEXAS**

_____

*Counsel of Record:*

ERLEIGH NORVILLE WILEY
KAUFMAN COUNTY CRIMINAL DISTRICT ATTORNEY

SUE KORIOTH
ASSISTANT DISTRICT ATTORNEY
SBN# 11681975
100 W. MULBERRY
KAUFMAN, TEXAS 75142
972 932-0260
*fax* 972 932-0357
suekorioth@aol.com

ATTORNEYS FOR THE APPELLEE,
THE STATE OF TEXAS

<u>IDENTITY OF PARTIES AND COUNSEL</u>:

Appellant: James Loyd Bankston

APPELLANT'S TRIAL COUNSEL: Andrew Jordan

APPELLANT'S COUNSEL ON THIS APPEAL: Lara Bracamonte


APPELLEE: the State of Texas

APPELLEE'S TRIAL COUNSEL: Erleigh Norville Wiley, Kaufman County
Criminal District Attorney, and Assistant Criminal District Attorneys
Phil Williams and Daniel T Floyd

APPELLEE'S COUNSEL ON THIS APPEAL: Erleigh Norville Wiley, Kaufman
County Criminal District Attorney; Sue Korioth, Assistant Criminal District
Attorney

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -v-

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATE'S COUNTERPOINT ONE
    Appellant waived review of the issue he argues on appeal; his complaint at trial
    does not comport with the issue on appeal. In any event, the trial court acted
    within its discretion in denying appellant's motion to suppress

STATE'S COUNTERPOINT TWO
    The evidence was sufficient to support the jury's verdict.

STATE'S COUNTERPOINT THREE
    The trial court did not abuse its discretion in refusing appellant's requested
    lesser-included-offense instruction. . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

STATEMENT OF PERTINENT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

STATE'S COUNTERPOINT ONE, restated. . . . . . . . . . . . . . . . . . . . . . . . . -12-

STATE'S COUNTERPOINT TWO, restated. . . . . . . . . . . . . . . . . . . . . . . . . -16-

STATE'S COUNTERPOINT THREE, restated. . . . . . . . . . . . . . . . . . . . . . . -20-

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

RULE 9.4 CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . -22-

# INDEX OF AUTHORITIES

<u>CASES</u>

*Bekendam v. State*,
　　441 S.W.3d 295 (Tex. Crim. App. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*Burrell v. State*,
　　445 S.W.3d 761 (Tex. App. – Houston [1ˢᵗ Dist.] 2014, pet. ref'd). . . . . -17-

*Evans v. State*,
　　202 S.W.3d 158 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . . -17-, -18-

*Garcia v. State,*
　　No. 05-10-00521-CR, 2011 WL 5231426
　　(Tex. App. – Dallas Nov. 3, 2011, no pet.)
　　(not designated for publication). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Goad v. State,*
　　354 S.W.3d 443 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Moskey v. State,*
　　333 S.W.3d 696 (Tex. App. – Houston [1ˢᵗ Dist.] 2010, no pet.). . . . . . . -15-


<u>STATUTES</u>

Tex. Code Crim. Proc. article 59.04(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

Tex. Transp. Code Sec. 601.051. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-


<u>RULES</u>

No. 05-14-00076-CR

IN THE

FIFTH COURT OF APPEALS

OF TEXAS

AT DALLAS, TEXAS

_____

JAMES LOYD BANKSTON

V.

STATE OF TEXAS

_____

TO THE HONORABLE JUDGES OF SAID COURT:

The State of Texas, appellee herein, respectfully submits this brief in response to appellant's brief, and would show the Court:

STATEMENT OF THE CASE

Appellant James Loyd Bankston was indicted for possession of methamphetamine, four grams or more but less than 200 grams, with intent to deliver. (CR: 7). He pleaded not guilty but was convicted by a jury, which found the enhancement paragraphs to be true and assessed his punishment at confinement for 45 years in TDCJ. (CR: 226). Appellant gave notice of appeal of his conviction to this Court.

STATE'S COUNTERPOINT ONE
Appellant waived review of the issue he argues on appeal; his complaint at trial does not comport with the issue on appeal. In any event, the trial court acted within its discretion in denying appellant's motion to suppress.

STATE'S COUNTERPOINT TWO
The evidence was sufficient to support the jury's verdict.

STATE'S COUNTERPOINT THREE
The trial court did not abuse its discretion in refusing appellant's requested lesser-included-offense instruction; in any event, any error was harmless.

SUMMARY OF THE ARGUMENT

Appellant claims that the trial court erred in denying his motion to suppress; the State contends appellant waived the issue regarding propriety of the inventory search by failing to present it to the trial court and that, in any event, the trial court properly denied the motion to suppress. In response to appellant's second and third issues, the State contends that the evidence was sufficient to link appellant to the contraband and that the trial court properly refused the requested lesser included offense.

STATEMENT OF PERTINENT FACTS

The indictment alleged that appellant did "intentionally or knowingly possess, with intent to deliver, a controlled substance, namely methamphetamine, in an amount of four grams or more but less than 200 grams." (CR: 7). The trial court heard appellant's motion to suppress on October 25, 2013. (RR2: 4). Defense counsel

commenced the hearing by announcing to the court that appellant would only contest "the basis for the stop. . . . We're narrowing our Motion to Suppress to the stop." (RR2: 4).

The State's first witness, Kaufman County Sheriff's Deputy Keith Wheeler testified that he was assigned to patrol and was working "running traffic up around Elmo" on October 16, 2012 from 6 a.m. to 6 p.m. (RR2: 5-6). He was working alone in a marked patrol unit when he saw a truck leaving a known drug house on County Road 352. (RR2: 6). He could see that the truck had two occupants; he followed the truck to the intersection of county roads 352 and 390, where it made a right hand turn while failing to use a turn signal. (RR2: 7-8). Wheeler testified that the intersection was one at which a turn signal would be required before making a turn. (RR2: 9). Wheeler testified that he followed the truck and initiated a traffic stop as soon as they reached a safe location. (RR2: 10).

Wheeler testified that the driver of the truck stopped in a driveway on county road 2728. (RR2: 11-12). Appellant was not driving but was in the front passenger seat. (RR2: 12). Defense counsel showed Wheeler a Google Maps aerial photo, and Wheeler testified that the photo did not accurately depict the intersection in question. (RR2: 14-15). Wheeler described the intersection in question, County Roads 352 and 390 as "a cross street. It's two county roads, they meet; 390 crosses 352. 352 heads

north and 390 crosses it, and there's a street on both sides. It's a four-way stop. (RR2: 15).

The State rested on the motion to suppress after Wheeler's testimony, and appellant presented no witnesses. (RR2: 17). The State argued to the court that the traffic violation was sufficient to justify the traffic stop; appellant argued that it was a "pretextual stop." (RR2: 17-18). Defense counsel asked the court "to conduct its own investigation" and urged the court to find, based upon defense aerial photos which had not been offered or admitted in evidence, that the location of the stop was not an intersection and that appellant was not required to signal his turn there. (RR2: 18-19). The court denied the motion to suppress based upon the officer's testimony and the absence of any evidence to the contrary. (RR2: 20-21).

The trial court called the case for jury trial on January 13, 2014, after which time defense counsel noted that the court had previously heard appellant's motion to suppress and denied it. (RR3: 7-9). After the jury was selected, the State called Deputy Keith Wheeler again to testify before the jury. (RR3: 132). Wheeler testified that he had worked for Kaufman County Sheriff's Office for approximately ten years, that he achieved the rank of Corporal, that he had worked as a Canine Officer, and that he was a Field Training Officer (FTO). (RR3: 132-33). Wheeler testified to his activities on the date of this offense, October 16, 2012. (RR: 133-34). He described

-4-

the location near the Elmo community where he was patrolling that afternoon and explained that he was watching a drug house on the north side of Highway 80. (RR3: 135-36). He explained that he was aware of numerous stops and arrests of persons in vehicles coming from that house; methamphetamine was the drug that had been recovered previously from visitors to that house. (RR3: 136).

Wheeler testified that at about 2:43 p.m. that day, he saw a Dodge pickup truck pull out of the driveway at that location; he pulled out to follow the Dodge pickup, intending to stop the vehicle if the driver committed a traffic violation. (RR3: 138). Wheeler testified that he followed the truck down county road 352 until it turned onto county road 390 without using the turn signal as required. (RR3: 138-39). Wheeler testified that he continued to follow the truck after the traffic violation until the truck turned onto county road 2728, at which time he initiated a traffic stop. (RR3: 140-41). Wheeler explained that his dash-cam video does not record all the time but instead records after he turns on his emergency lights. (RR3: 141).

Wheeler sponsored introduction of State's exhibits 1 and 2, the dashcam video and a map of the area. (RR3: 142-44). He pointed out the locations where he saw the vehicle leave the drug house, saw the traffic violation, and stopped the vehicle. (RR3: 144-47). Wheeler testified that he stopped the vehicle, and he identified appellant in open court as the passenger. (RR3: 149-50). Wheeler explained that when he

stopped the vehicle, he approached on foot, spoke to the driver, and requested her driver's license and proof of insurance. (RR3: 150). He told her why she was stopped, for failing to signal a turn, and she explained that she was only just learning to drive a standard truck and that the truck belonged to appellant. Wheeler identified State's exhibit 3, a certificate of title showing that the truck belonged to James C Bankston and appellant's mother Bertha Bankston from November 2000. (RR3: 152). He testified further that after this arrest, in January 2013, the vehicle title showed previous owners as "Shaila Shirley and James Bankston." State's exhibit three includes forfeiture judgments showing that forfeiture proceedings filed against the vehicle named both Shirley and appellant as putative owners and that default judgments were entered against each of them. (RR3: 152).

Wheeler testified that when he stopped the vehicle he asked for – and both driver and passenger provided – identification. Neither could produce any valid proof of insurance. (RR3: 152-54). Wheeler informed both occupants of the vehicle that they could receive a citation and the vehicle could be towed if there was no insurance, because without insurance the vehicle could not be driven on public roadways. (RR3: 154). Wheeler determined that there was no insurance based upon the absence of proof as well as appellant's admission to him that there was no current insurance. (RR3: 155). Wheeler informed them that the vehicle would be impounded; the

occupants were out of the vehicle, and he performed an inventory of its contents prior to it being towed to prevent civil liability for later claims of lost items and to safeguard valuables that were present. (RR3: 155-56).

Wheeler testified that in the course of performing the inventory, he found drugs and drug paraphernalia in the car: a used syringe with a red substance (blood) at the end in the driver's side floor; a small packet of a crystalline substance which appeared to be methamphetamine wrapped in male clothing in the backseat; and scales and empty plastic bags in some black pouches hidden under or between the driver and passenger seats. Wheeler testified that these bags and scales could be used to divide larger packets of drugs into smaller portions for resale. (RR3: 156-58). Wheeler spoke to both occupants, and when neither claimed ownership of the drugs and paraphernalia, he advised them that they would both be arrested for possession of drug paraphernalia. (RR3: 158-59). After he informed them that they were being arrested, Shaila Shirley (the driver) spoke to him and advised that she had methamphetamine in her pants. Wheeler had her retrieve it; he testified that male officers do not pat down female offenders and that the patrol division of the Kaufman Sheriff's Office is mostly male officers. (RR3: 159-60). Shirley had five packets of what he believed to be methamphetamine and 13 prescription pills hidden in her pants. (RR3: 161).

Wheeler testified that he also found $1900.00 in cash in Shirley's purse in the truck. (RR3: 161-62). Wheeler pointed out on photos, State's exhibits 1 and 2, where he found the various items in the truck on the inventory search. (RR3: 164-66). Wheeler testified that when he asked appellant whether there was anything in the truck that he (Wheeler) needed to know about and appellant responded, "if there is it isn't mine," Wheeler thought that was suspicious. Appellant showed Wheeler the place on his arm where he "shot up," and appellant told Wheeler he had shot up that morning. (RR4: 8-10). Wheeler testified that dealers may have buyers use in their presence to prove they are not working for law enforcement, because informants are not permitted to use drugs. (RR4: 10).

Wheeler sponsored admission of State's exhibit 8, which was the six plastic baggies of drugs he seized that day, and State's exhibit 9, which contained thirteen pills containing clozapine hydrochloride (an antipsychotic). (RR4: 11-13). He identified State's exhibit 10 and 10A, the syringe he recovered from the floor of the truck and the container it was stored in. (RR4: 13-15). He identified State's exhibit 11, the bag containing two black pouches which held empty plastic bags and a scale, which Wheeler recovered from the truck. (RR4: 15-16). Finally, he identified State's exhibit 12, the container holding $1920.00 found inside Shirley's purse. (RR4: 16-17). The exhibits were admitted. (RR4: 25-26).

Over appellant's objection, Wheeler testified to "what situation" he encountered that day:

> I seen the vehicle parked at a known drug house known for dealing drugs, selling drugs. The vehicle left, I stopped the vehicle, found paraphernalia inside. It's a common practice for, in my experience that, the male will find a female to drive the vehicle preferably without a criminal history because they know if they do get stopped by the police and they hide the drugs on a female's person that there's a better chance that it will not be found just due to the fact that we're not allowed to search certain areas on a female. With the paraphernalia inside the truck, he informed me that he shot up that morning. You know, that to me that shows that he was showing the dealer, you know, that he could trust him and to purchase the narcotics from him.

(RR4: 28). In response to additional questions from the prosecutor, Wheeler testified that he noted the amount of methamphetamine seized that day and that when considered with the paraphernalia seized, it was consistent with intent to deliver. (RR4: 28). Wheeler testified that the amount of methamphetamine seized was inconsistent with possession only for personal use. (RR4: 29). Wheeler testified that the sixth baggie was found in male clothing inside a black duffel bag that appellant claimed was his bag. (RR4: 33).

The State next called Texas DPS Forensic Scientist Nick Grizzle, who testified that he was assigned to work at the DPS laboratory in Garland, about the process of forensic drug testing, and about testing the drugs in this case. (RR4: 44-49). Grizzle testified that he tested all six of the baggies of drugs seized in this case and contained

in State's exhibit 8. In addition, he analyzed the prescription drugs contained in State's exhibit 9. (RR4: 49-50). He sponsored admission of his report, State's exhibit 13, which reflects that the net weight of methamphetamine in the six bags was 15.95 grams. (RR4: 51-52). He also determined that the illegally possessed pills hidden in Shirley's pants were cyclobenzaprine (a muscle relaxer). (RR4: 53-55). Grizzle did not weigh each of the six baggies separately. (RR4: 56-57).

Kaufman County Sheriff's Sergeant Keith Ramsey next testified that he was the narcotics investigator for the county; he testified to his training and experience in narcotics investigation. (RR4: 58-60). Ramsey testified that most users purchase only 1 or 2 grams at a time; he explained that dealers will sometimes give a price break over ½ ounce and that a buyer will sometimes sell enough to finance what they personally use. Ramsey explained that most methamphetamine now in Kaufman County comes from Mexico. (RR4: 62-63). Ramsey testified that he uses informants in his investigations but that they are not permitted to use drugs or commit crimes themselves. (RR4: 63-64). Ramsey testified that it is common for people to sample drugs or be asked to use at the time of purchase, "kind of a trust issue." (RR4: 64). He explained that the expectation that a buyer will use decreases when larger amounts of drugs are involved. (RR4: 65).

Ramsey testified that methamphetamine is generally ingested by smoking,

injecting, or eating it. (RR4: 67-68). The most common dose is less than one gram, most often one tenth of a gram, which is referred to as a dime-bag or dime-rock and which usually costs ten to twenty dollars. (RR4: 68). He agreed that the 15.95 grams of methamphetamine seized in this case could have made nearly 160 tenth of a gram hits or doses. (RR4: 71). Ramsey testified that before methamphetamine is sold at the street level, the seller frequently "steps" on it, diluting it with another substance to make more money. By "stepping on" the 15.95 grams of methamphetamine in this case, the re-seller could sell 320 hits or doses. (RR4: 73-75).

Ramsey testified that in his experience, the 15.95 gram amount in this case was not for personal use, particularly in light of the presence of baggies and scales in the vehicle, because there would be no need to weigh or repackage the drugs for personal use. (RR4: 75-76). Ramsey testified that he was familiar with the Whiteside residence on Highway 80 near Elmo; he had executed search warrants there and heard it mentioned as a source for drugs. (RR4: 77-78). He testified that when traveling to and from a known drug house, it is common practice to use women to carry the drugs because it is more cumbersome for male law enforcement officers to search them without making a formal arrest and taking them to jail to be searched by a female officer. (RR4: 79-80). He explained that in his experience some women are used as decoys while others are actually part of the drug gang of dealers. (RR4: 84-

-11-

85).

The State rested after Ramsey's testimony. (RR4: 87). Appellant declined to testify, the defense moved for instructed verdict after re-urging appellant's previous objection to evidence obtained after the traffic stop. The court denied appellant's motions, after which the defense recalled Corporal Wheeler to testify that one of the receipts in State's exhibit 11, the bag in which the scales were found, was from Sheppler's in Mesquite, closer to where Shirley lived than to where appellant lived. (RR4: 92-94).

Both sides rested and closed. (RR4: 94). Appellant requested that a lesser included offense instruction of possession of less than one gram be included in the jury charge, based upon the evidence that one of the six baggies of methamphetamine came from the bundle of men's clothing in the backseat of the pickup truck and that the six baggies were not individually weighed. The court denied the request for a lesser included offense. (RR4: 95-96).

## ARGUMENT

### STATE'S COUNTERPOINT ONE, restated
Appellant waived review of the issue he argues on appeal; his complaint at trial does not comport with the issue on appeal. In any event, the trial court acted within its discretion in denying appellant's motion to suppress.

Appellant complains that the trial court erred in denying his motion to suppress evidence which was obtained after – appellant claims – the officer performed a

-12-

warrantless search of the vehicle outside the automobile exception and not otherwise authorized by law. The State first contends that appellant failed to preserve any such claim for review by this Court.

Appellant filed a pre-trial motion to suppress and obtained a hearing on the motion. When the hearing commenced, however, defense counsel informed the court that appellant would only contest "the basis for the stop. . . . We're narrowing our Motion to Suppress to the stop." (RR2: 4). Having failed to assert in the trial court any illegality in regard to the inventory search which Wheeler conducted after impounding the uninsured vehicle, and having specifically limited his complaint to the initial stop, appellant has waived review of that issue in this Court. Tex. R. App. P. 33.1; *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014) (To preserve error the point of error on appeal must comport with the objection made at trial).

In the event this Court should find for some reason that appellant did not waive review of this point of error, the State contends the trial court was within its discretion in denying the motion to suppress. Corporal Wheeler testified that he stopped the vehicle for a traffic offense in view, (RR2: 7-8; RR3: 138-39), and that when he asked for identification and proof of insurance, he quickly determined from the vehicle's occupants that there was no current insurance for the vehicle. (RR3:

149-50, 152-55).  Wheeler testified that without insurance, neither occupant could drive the vehicle, and he determined that it would need to be impounded.  Wheeler then testified that he performed an inventory of the vehicle's contents for the dual permissible purposes of protecting the occupants' property and protecting the department from liability for wrongful claims of stolen property.  (RR3: 155-56).

Appellant did not direct the trial court to any flaws in the officer's actions, nor did he present any controverting evidence which might – if true – have demonstrated that the inventory search was not lawful. Defense counsel did not direct any questions to the officer at the motion to suppress hearing or at trial questioning the procedure used to inventory the vehicle.  The officer was justified in impounding the vehicle because, pursuant to Tex. Transp. Code Sec. 601.051, it could not be driven without insurance.

> We review the trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State,* 312 S.W.3d 554, 559 (Tex. Crim. App.2010); *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex. Crim. App.2010). We afford almost total deference to the trial court's rulings on (1) questions of historical fact that the record supports, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor, and (2) "application of law to fact questions" that turn on an evaluation of credibility and demeanor. *Valtierra,* 310 S.W.3d at 447; *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App.2007). We apply a de novo review to the trial court's application of the law to the facts. *Hubert,* 312 S.W.3d at 559; *Amador,* 221 S.W.3d at 673.
>
> The trial court is the sole trier of fact and the judge of witness credibility

and the weight to be given to witness testimony. *Valtierra,* 310 S.W.3d at 447. When, as here, the trial court does not make explicit findings of fact, the appellate court must view the evidence in the light most favorable to the trial court's ruling and assume the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling. *Hubert,* 312 S.W.3d at 560. We must uphold the trial court's ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Valtierra,* 310 S .W.3d at 447–48 (quoting *State v. Dixon,* 206 S.W.3d 587, 590 (Tex .Crim.App.2006)).

*Garcia v. State,* No. 05-10-00521-CR, 2011 WL 5231426, at *2 (Tex. App. – Dallas Nov. 3, 2011, no pet.)(not designated for publication).

Although appellant claims that the officer's impoundment of the vehicle was not specifically authorized by the Transportation Code, the State contends the impoundment was lawful under applicable law. *See Moskey v. State,* 333 S.W.3d 696 (Tex. App. – Houston [1ˢᵗ Dist.] 2010, no pet.). Appellant admitted that he had no current insurance on the truck, it was stopped on the side of the road miles from either appellant's or Shirley's home, (RR3: 162), and the officer properly exercised his discretion in impounding the uninsured vehicle. Although the officer could have been more thorough in describing the impound and inventory policies of his department if appellant had made any objection at trial, any vagueness in his testimony should be evaluated in the context of the entire record, including the fact that defense counsel had directed the court's and the prosecutor's attention only to his complaint regarding the initial basis for the traffic stop. The trial court acted within its discretion in denying the motion to suppress.

The evidence was sufficient to support the jury's verdict.

Appellant next complains that the evidence was insufficient to support the jury's verdict because it fails to adequately link appellant to the contraband.[1] The State contends that the evidence was sufficient to link appellant to the contraband and that appellant has utilized an incorrect standard to argue the contrary.

A. Standard of Review

Evidence is insufficient to support a conviction if, considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt. *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App. - Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Gonzalez,* 337 S.W.3d at 479. If an appellate court concludes that the evidence is insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *Gonzalez*, 337 S.W.3d at 479 (*citing Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982)).We determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton*, 235 S.W.3d at 778. We likewise defer to the

---

[1]Appellant does not contest the evidence adduced to prove intent to deliver.

-16-

factfinder's evaluation of the credibility of the evidence and the weight to give the evidence. *Gonzalez*, 337 S.W.3d at 479 (*citing Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). The reviewing court must also "consider all evidence which the jury was permitted, whether rightly or wrongly, to consider." *Thomas v. State,* 753 S.W.2d 688, 695 (Tex.Crim.App.1988) (*en banc*) (emphasis omitted). If a portion of this evidence was erroneously admitted, the accused may complain on appeal of such error, and a new trial should be ordered if the error is reversible. *Id.* [footnotes omitted]

*Burrell v. State*, 445 S.W.3d 761, 764 (Tex. App. – Houston [1ˢᵗ Dist.] 2014, pet. ref'd).

In regard to prosecutions for possession of controlled substances, when a defendant is not in exclusive possession of the contraband,

"the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband."Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule which protects the innocent bystander — a relative, friend, or even stranger to the actual possessor — from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt. It is, as the court of appeals correctly noted, not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.

*Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006).

Appellant does not argue that the combined force of the links established by

the State's evidence were insufficient; instead, appellant takes each link in isolation and dismisses it, concluding that this Court should find the evidence insufficient because each link in isolation is insufficient to link him to the contraband. The Court of Criminal Appeals has explained that this type of analysis is incorrect:

> The court of appeals, however, analyzed each one of these facts or links in isolation. Apparently relying on alternative inferences from or explanations for almost every piece of evidence, it disregarded that evidence and concluded that nothing but appellant's presence and proximity linked him to the drugs. It also recited further possible "affirmative links" that might have connected appellant to the drugs (such as intoxication, flight, and furtive gestures) but did not exist in this case. The jury presumably went through exactly the same weighing of evidence, credibility assessments, and alternative-explanation exercises and came to the opposite conclusion, i.e., appellant was connected to the drugs. Under federal and Texas law, juries trump both trial and appellate judges on weight-of-evidence determinations.

*Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006).

The State contends that when the various circumstances proven in this case are examined under the appropriate standard, the combined forces of those circumstances is sufficient to support the jury's verdict. In the instant case, as in *Burrell,* appellant was in the truck with his female co-defendant Shirley leaving a known drug house when Corporal Wheeler first saw them. Wheeler and Ramsey both testified that they had made numerous drug arrests of offenders who acquired drugs at that location. The officer testified that appellant admitted that he had used methamphetamine that morning, and a used syringe was found in the floorboard of the pickup. Bags and

scales were found under the seat within reach of both appellant and Shirley. One baggie of methamphetamine was found in male clothing in a bag which appellant claimed belonged to him in the back seat. And five additional baggies of meth were found on Shirley's person.

In addition to the eyewitness testimony regarding these circumstances, the State also presented evidence that the pickup truck was not owned by co-defendant Shirley prior to the offense, but was instead owned by appellant or his parents.[2] Appellant relies on the forfeiture pleadings filed after this offense to demonstrate that Shirley was a co-owner of the vehicle; it appears, however, that Shirley was simply named as a putative owner in the forfeiture pleadings because she was driving the vehicle at the time of seizure. *See* Tex. Code Crim. Proc. article 59.04(j)("a person who was in possession of the property at the time it was seized shall be made a party to the [forfeiture] proceeding."). Nothing in State's exhibit 3 or otherwise shows that the vehicle belonged to anyone except appellant and his mother on the date of the offense.

Finally, the State presented expert testimony from Corporal Wheeler and Sergeant Ramsey that the location where the truck was first seen was a known drug

---

[2] Although the witness and the State assumed that the "James Bankston" named on title documents with Bertha Bankston was appellant, in fact State's exhibit 3 includes an affidavit of heirship for the vehicle which states that "James C. Bankston" died in 2008; appellant's name is James **Loyd** Bankston. The officer testified that Bertha was appellant's mother.

source location, that most of the Kaufman County Sheriff's patrol officers were male and could not fully search female suspects, and that – consequently – it was a common practice in the area for persons transporting drugs to use a woman decoy or co-conspirator to carry the drugs. The jury was entitled to consider this testimony in conjunction with the physical circumstances of the offense and the title information and to determine that the combined force of these circumstances was sufficient to ensure that appellant was not merely an innocent bystander. This point of error is meritless.

### STATE'S COUNTERPOINT THREE, restated
The trial court did not abuse its discretion in refusing appellant's
requested lesser-included-offense instruction.

Appellant requested a lesser included offense instruction which would have permitted the jury to find him guilty of possession of methamphetamine in an amount less than one gram, but the court denied that instruction. He did not request a lesser included charge of possession (or possession with intent to deliver) methamphetamine in an amount of one gram or more but less than four grams. The State contends that the evidence did not support submission of the requested lesser-included possession charge.

> The evidence supports an instruction on a lesser-included offense
> if it permits a rational jury to find the defendant guilty only of the
> lesser-included offense. "[T]here must be some evidence directly
> germane to the lesser-included offense for the finder of fact to consider
> before an instruction on a lesser-included offense is warranted." We
> consider all of the evidence admitted at trial, not just the evidence

presented by the defendant. The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense. "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." However, we may not consider "[t]he credibility of the evidence and whether it conflicts with other evidence or is controverted." [footnotes omitted]

*Goad v. State,* 354 S.W.3d 443, 446-47 (Tex. Crim. App. 2011).

The State contends that although possession of methamphetamine in an amount less than one gram was an offense included within the indicted offense of possession, with intent to deliver, of methamphetamine in an amount of 4 grams or more but less than 200 grams, no evidence was admitted which would "establish that the lesser-included offense is a valid, rational alternative to the charged offense." Appellant did not testify, nor did he or the State offer any evidence that he possessed the single baggie of drugs but not the remainder of the drugs and the delivery-related paraphernalia in his pickup truck. In addition, Sergeant Ramsey explained to the jury that a single Sweet-n-Low packet is approximately one gram in weight, the six baggies of methamphetamine seized were admitted in evidence, and the jury could readily determine by examining the evidence that none of the six packets was less than one gram in weight. (RR4: 68). Although the physical evidence before the jury might arguably have supported an instruction on the lesser-included offense of possession of one gram or more but less than 4 grams of methamphetamine, appellant did not request that instruction. The trial court did not abuse its discretion in refusing

-21-

the lesser-included instruction which actually was requested.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, there being legal and competent evidence sufficient to justify the verdict, the State requests that this Honorable Court will affirm the the judgment of the Trial Court below.

Respectfully submitted,

ERLEIGH NORVILLE WILEY
CRIMINAL DISTRICT ATTORNEY
KAUFMAN COUNTY, TEXAS

ATTORNEYS FOR THE STATE

   /s/ Sue Korioth
SUE KORIOTH,
  State Bar No. 11681975
ASST. CRIMINAL D.A.
100 W. MULBERRY STREET
KAUFMAN, TEXAS 75142
(972) 932-4331 ext. 1264
FAX (972) 932-0357
suekorioth@aol.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 13th day of March 2015, a copy of the foregoing will be served on Lara Bracamonte, attorney for appellant, by e-service if available, or by placing in U.S. Mail and by email to her email address.

   /s/ Sue Korioth

## RULE 9.4 CERTIFICATE OF COMPLIANCE

Using the Wordperfect 5 word count utility, I have determined that this document contains 5,271 words, not including the "caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix." TRAP 9.4(I).

   /s/ Sue Korioth